# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **BRIAN REED,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| | **Case No. 2:08-cv-49-DAK-PMW** |
| **v.** | |
| **STATE OF UTAH and WEST VALLEY CITY POLICE DEPARTMENT,** | **District Judge Dale A. Kimball** |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

This case was referred to Magistrate Judge Paul M. Warner by District Judge Dale A. Kimball pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Before the court are motions to dismiss filed by the State of Utah (the "State")[2] and the West Valley City Police Department (the "WVCPD").[3]  The court has carefully reviewed the written memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda.  *See* DUCivR 7-1(f).

---

[1]  On January 18, 2008, this case was initially referred to Magistrate Judge Brooke C. Wells.  *See* docket no. 6.  On February 26, 2008, Magistrate Judge Wells entered an order of recusal and the referral was reassigned to Magistrate Judge Warner.  *See* docket no. 17.

[2]  *See* docket no. 12.

[3]  *See* docket no. 15.

## RELEVANT BACKGROUND

As a preliminary matter, the court notes that Brian Reed ("Plaintiff") is proceeding pro se in this case.  Accordingly, the court will construe his pleadings and other filings liberally.  *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

On January 17, 2008, Plaintiff's motion for leave to proceed without prepayment of fees under 28 U.S.C. § 1915 (the "in forma pauperis statute")[4] was granted,[5] Plaintiff's complaint was filed,[6] and this case was assigned to Judge Kimball.[7]  On that same date, Plaintiff filed a motion to appoint counsel[8] and a motion for service of process.[9]  In an order dated January 28, 2008, Magistrate Judge Wells denied Plaintiff's motion to appoint counsel but granted Plaintiff's motion for service of process.[10]

Although Plaintiff's complaint names the State, the WVCPD, "1300 South Main," and the "police and paramedics" as defendants, it appears that the State and the WVCPD are the only parties that could be identified and served with Plaintiff's complaint.[11]  Although Plaintiff failed

---

[4]  *See* docket no. 1.

[5]  *See* docket no. 2.

[6]  *See* docket no. 3.

[7]  *See id*.

[8]  *See* docket no. 4.

[9]  *See* docket no. 5.

[10]  *See* docket no. 7.

[11]  *See* docket nos. 9, 10, 11.

to identify any statutory basis for his case in the first section of his complaint, it appears as though he is alleging claims for a violation of his civil rights under 42 U.S.C. §§ 1983 and 1985.

In the portion of his complaint identifying the specific cause of action alleged, Plaintiff asserts that he "was not granted the protection under the law."[12]  The factual basis for Plaintiff's complaint is set forth in several pages attached thereto.[13]  The court has made its best effort to decipher the contents of those pages, which are difficult to read because they contain handwriting that is often illegible.  As best the court can tell, Plaintiff alleges the following facts in support of his complaint.

On either March 10 or March 11, 2007, Plaintiff was the victim of a shooting in West Valley City, Utah.  According to Plaintiff, he "was shot six times and left to die."[14]  After being shot, Plaintiff was not offered any help by passing cars or bystanders.  As a result, Plaintiff took off his belt, used the belt as a makeshift tourniquet near one of his gunshot wounds, and dragged himself into the middle of Redwood Road in West Valley City.  After reaching the middle of the road, Plaintiff asserts that all he "had left was prayer and the hope either a car would run [over him] or [that the car's occupants would] stop and call [911]."[15]  After several cars drove around him, a young man driving a car stopped and called 911.  Plaintiff was then taken by helicopter to a hospital where he received treatment for the gunshot wounds.  Plaintiff claims that the only

---

[12]  Docket no. 3 at 4.

[13]  *See* docket no. 3 at 8–17.

[14]  *Id*. at 8.

[15]  *Id*. at 9–10.

time he was interviewed by police concerning the shooting was while he was being placed in the helicopter for transport to the hospital.

After Plaintiff was released from the hospital, which he alleges was sometime between March 30 and April 2, 2007, he went directly to a convenience store near 1700 South and Main Street in Salt Lake City, Utah.  Plaintiff claims that while still in his "hospital shoes," he purchased one can of beer and drank it in the parking lot.[16]  Plaintiff assumes that the can of beer must have "thinned [his] blood, freeing a massive blood clot in [his] leg[,] allowing it to travel to [his] heart and lung."[17]  Not knowing what was wrong, Plaintiff went into the convenience store and asked the clerk to call 911.  The clerk refused.

That notwithstanding, approximately fifteen minutes later, Plaintiff asserts that the police and paramedics arrived.  Plaintiff showed them his recent gunshot wounds and explained that he had been released recently from the hospital.  According to Plaintiff, the police and paramedics then "huddled in a corner . . . for a couple of minutes[,] then came to [Plaintiff] and said, 'Mr. Reed[,] if you call us one more time tonight[,] you will be paying for all of these emergency vehicles or you will be going to jail.'"[18]  Plaintiff asserts that "[t]hey left [him] there begging to go to the hospital or jail.  They just took off."[19]  Plaintiff then flagged down a taxi about an hour

---

[16]  *Id*. at 17.

[17]  *Id*.

[18]  *Id*.

[19]  *Id*.

later and had the taxi take him to a friend's house.  Plaintiff stayed on his friend's couch until

approximately 8:00 a.m. the following morning.

When another of Plaintiff's friends arrived at the house where Plaintiff had stayed the

night, that friend told Plaintiff that he did not look well and needed to go to the hospital.  Plaintiff

explained to his friend that he was hesitant to call the paramedics because that would result in

him going to jail.  Plaintiff's friend disregarded Plaintiff's concerns and called 911.  Plaintiff

asserts that a paramedic crew later arrived that was different from the paramedic crew from the

previous day.  According to Plaintiff, "[a]fter taking one look at [him,] they knew that [he] was

critically ill and immediately took [him] to the hospital[,] where they found massive blood clots

in [his] heart and lung."[20]  Although it is not explicitly stated in his complaint, it appears as

though Plaintiff later made a full recovery.

Apparently after making that full recovery, Plaintiff believed that the police would

interview him further about the shooting.  However, according to Plaintiff, no further interviews

occurred.  In addition, Plaintiff asserts that the police never came to the hospital or interviewed

him quickly enough to allow him to accurately relay certain facts about the shooting.  Plaintiff

eventually called a police detective to inquire whether an investigation was underway concerning

the shooting.  Plaintiff claims that the police detective told him that no investigation was

underway.  The police detective also allegedly indicated that Plaintiff's girlfriend had called the

---

[20]  *Id.*

police to tell them that Plaintiff was shot because he "was robbing someone," was involved in a "drug deal went [sic] bad," or that "aliens got [him]."[21]  Plaintiff then hung up on the detective.

Nearly a month later, Plaintiff claims that he "solved [his] own crime."[22]  He heard something through the "grapevine"[23] that he believes is accurate.  Plaintiff asserts that a "gang was paid to shoot [him]"[24] and that the perpetrators planted shell casings along the street in order to confuse the detective referenced above.  Plaintiff believes, however, that the perpetrators shot him mistakenly.  Plaintiff claims that he now lives in fear every day, wondering when he will "get finish[ed] off"[25] because he is the only living witness to the shooting.

Based upon those facts, Plaintiff alleges that his civil rights have been violated.  He appears to assert that the police department violated his rights by failing to adequately investigate the shooting.  He also appears to assert that the police and paramedics violated his rights by refusing to provide him with adequate medical treatment when they encountered Plaintiff at the convenience store.  In the portion of his complaint devoted to a prayer for relief, Plaintiff asserts that he is seeking $20 to 40 million for the violation of his rights.  In later portions, however, Plaintiff specifically alleges that he is seeking either $30 million or $10 million.

---

[21]  *Id*. at 13.

[22]  *Id*. at 14.

[23]  *Id*.

[24]  *Id*.

[25]  *Id*. at 15.

In addition to his complaint, Plaintiff has lodged a large number of other documents with the court. Indeed, from March 6, 2008, to the date of this Report and Recommendation, Plaintiff has sent more than 45 letters or other pieces of correspondence to the court concerning this case.[26] In many of those documents, Plaintiff simply reiterates the events described in his complaint.[27] In others, he inquires about the status of his case and wonders why it is not moving forward.[28] In a recent filing, he apologizes to the court for his mental state and indicates the he is "on [his] meds [sic] now."[29] Interestingly, in that same filing, Plaintiff included a document that appears to have been issued by an emergency room doctor who treated Plaintiff in 2002.[30] In that document, the doctor indicates that Plaintiff was "[h]earing voices" and that Plaintiff suffers from "chronic psychiatric problems" that may be attributable to "schizophrenia."[31]

## ANALYSIS

### I. Motions to Dismiss

The State and the WVCPD and have each filed a motion to dismiss Plaintiff's complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure. When considering a motion to dismiss under rule 12(b)(6), the court must consider whether the complaint contains "enough

---

[26] *See* docket nos. 20–23, 26–36, 38–51.

[27] *See, e.g.*, docket no. 49.

[28] *See, e.g.*, docket no. 32.

[29] Docket no. 47 at 1.

[30] *See id.* at 7.

[31] *Id.*

facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.

Ct. 1955, 1974 (2007); *see also Hollonbeck v. United States Olympic Comm.*, 513 F.3d 1191,

1194 (10th Cir. 2008).

## A. The State

In its motion to dismiss, the State argues that Plaintiff's complaint fails to state a claim

for relief because (1) the State is entitled to sovereign immunity and (2) the State is not a

"person" for purposes of §§ 1983 and 1985.  The court will address each argument in turn.

First, it is well settled that the Eleventh Amendment prohibits a citizen from filing suit

against a state in federal court, unless the state has waived its immunity by consenting to suit or

Congress has abrogated the state's sovereign immunity.  *See, e.g.*, *Ruiz v. McDonnell*, 299 F.3d

1173, 1180-81 (10th Cir. 2002).  Eleventh Amendment immunity applies to all suits brought in

federal court, including those brought under §§ 1983 and 1985.  *See Seibert v. Oklahoma*, 867

F.2d 591, 594 (10th Cir. 1989).  The State argues that it has not waived nor has Congress

abrogated its Eleventh Amendment immunity in this case.  The court agrees.  Therefore,

Plaintiff's claims against the State under §§ 1983 and 1985 are barred by the Eleventh

Amendment.

Second, it also is well settled that §§ 1983 and 1985 provide a remedy against "persons"

in violation of their provisions.  *See* 42 U.S.C. § 1983 (providing that it applies to "[e]very

person" in violation of its provisions); 42 U.S.C. § 1985 (providing that it applies to "two or

more persons" in violation of its provisions).  The United States Supreme Court has held that

"neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

*Will v. Mich Dep't of State Police*, 491 U.S. 58, 71 (1989).  That holding applies equally to § 1985.  *See, e.g.*, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 678 (9th Cir. 1991); *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Santiago v. New York Dep't of Corr. Servs.*, 725 F. Supp. 780, 783 (S.D.N.Y. 1989), *rev'd on other grounds*, 945 F.2d 25 (2d Cir. 1991); *Weathers v. West Yuma County Sch. Dist. R-J-1*, 387 F. Supp. 552, 555-56 (D. Colo. 1974), *aff'd*, 530 F.2d 1335 (10th Cir. 1976).  Therefore, Plaintiff's claims against the State under §§ 1983 and 1985 fail as a matter of law.

   For these reasons, the court concludes that Plaintiff's complaint fails to state a claim for relief against the State.  Accordingly, the State's motion to dismiss should be **GRANTED**.

### B.  The WVCPD

   In its motion to dismiss, the WVCPD argues that (1) the court lacks subject matter jurisdiction over this case and (2) Plaintiff's complaint fails to state a claim for relief against the WVCPD.  The court will address those arguments in turn.

   First, the WVCPD argues that the court lacks subject matter jurisdiction over this case because Plaintiff's complaint fails to identify a federal statute that establishes subject matter jurisdiction and because the WVCPD was not properly served pursuant to the relevant rules of civil procedure.  The court concludes that those arguments are without merit.

   As previously indicated, it is true that Plaintiff failed to identify any statutory basis for his case in the first section of his complaint.  However, under a liberal reading of Plaintiff's complaint, *see Ledbetter*, 318 F.3d at 1187, it appears that he is alleging claims for a violation of his civil rights under §§ 1983 and 1985.  Those statutory provisions clearly provide the court

with subject matter jurisdiction over this case.  Turning to service of process, because service of the summons and complaint in this case was court-ordered and completed by the United States Marshals Service, the court will not force Plaintiff to bear the burden of any inadequacies related to service of process.  Further, because the WVCPD responded in a timely fashion to Plaintiff's complaint with its motion to dismiss, it appears as though service of process was constructively adequate.

Second, the WVCPD argues that Plaintiff's complaint fails to state a claim for relief against the WVCPD.  The WVCPD asserts that it is not a legal entity amenable to suit.  The WVCPD also maintains that while Plaintiff appears to be alleging an equal protection claim against the WVCPD, he has failed to specifically allege an essential element of that claim, namely, that the WVCPD treated him differently from others who are similarly situated.  *See, e.g.*, *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) (stating that in order to prevail on an equal protection claim when a plaintiff "does not allege that a fundamental right is at stake [or] that he is a member of a suspect class," he must show that he was treated "differently than others similarly situated . . . and that this different treatment lacked a rational basis" (final alteration in original) (quotations and citations omitted)).  The court concludes that those arguments are likewise without merit.

While it may be true that the WVCPD is not a legal entity amenable to suit, there is no doubt that there is some entity underlying or behind the WVCPD that is amenable to suit, presumably West Valley City.  In this case, where the court must construe Plaintiff's pleadings liberally, *see Ledbetter*, 318 F.3d at 1187, it would appear that dismissing Plaintiff's claims on

10

the basis that the WVCPD is not a legal entity would be a waste of the parties' and the court's time and resources. If the court were to recommend dismissal of Plaintiff's claims without prejudice on that basis, Plaintiff would simply file the same claims in a new complaint against the proper entity. If Plaintiff did so, WVCPD's counsel would likely file a motion to dismiss presenting the same arguments concerning Plaintiff's failure to state a claim for relief presented in the WVCPD's motion to dismiss in this case. The court finds no judicial economy in such a wasteful and duplicative approach in this case.

The court now turns to the WVCPD's argument that Plaintiff has failed to specifically allege that the WVCPD treated him differently from others who are similarly situated. Based on a strict reading of Plaintiff's complaint and other filings, the court agrees. However, as previously established, the court does not view Plaintiff's complaint and other filings in such a narrow manner. Instead, because Plaintiff is proceeding pro se, the court is required to construe his complaint and other filings liberally. *See id*. While it appears that Plaintiff did not make the specific allegation that the WVCPD treated him differently from others who are similarly situated, he did allege that the WVCPD did not adequately investigate a shooting in which he was the victim. In the court's view, a clear implication of that allegation is that the WVCPD does adequately investigate other shootings involving other victims. Accordingly, and under a liberal reading of Plaintiff's complaint, the court concludes that Plaintiff's complaint contains sufficient allegations to overcome the WVCPD's argument.

Because the court has rejected all of the WVCPD's arguments, it would appear that the court should recommend denial of the WVCPD's motion to dismiss. However, as the following

11

discussion will demonstrate, the court has determined that Plaintiff's complaint should be dismissed pursuant to the in forma pauperis statute.  Accordingly, the WVCPD's motion to dismiss should be deemed **MOOT**.

## II.  Dismissal Under the In Forma Pauperis Statute

In order to properly address the State's and the WVCPD's motions to dismiss, the court was required to undertake a careful and thorough review of Plaintiff's complaint and other filings.  As a result of that review, and based upon the court's decision to allow Plaintiff to proceed in forma pauperis in this case, the court has determined that dismissal of Plaintiff's complaint is appropriate under the in forma pauperis statute.

Whenever the court authorizes a party to proceed without the prepayment of fees under the in forma pauperis statute, the court is required to "dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious."  28 U.S.C. § 1915(e)(2)(B)(i).  The United States Supreme Court has construed the term "frivolous" within the context of the in forma pauperis statute by stating that

> a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . . . [The in forma pauperis statute]'s term "frivolous," when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation.

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The in forma pauperis statute

> accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear

12

> that the defendants are immune from suit . . . and claims of
> infringement of a legal interest [that] clearly does not exist . . . .
> Examples of the latter class are claims describing fantastic or
> delusional scenarios . . . .

*Id*. at 327-28; *see also Hall v. Bellmon*, 935 F.2d 1106, 1108-10 (10th Cir. 1991).

After carefully reviewing Plaintiff's complaint and other filings, the court has determined that all of Plaintiff's claims in this case fall squarely within the second of those two categories because the underlying factual allegations "rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), and describe "fantastic or delusional scenarios." *Neitzke*, 490 U.S. at 328. Plaintiff's court filings are replete with incredible and fantastic factual allegations that have little or no relation to his purported legal claims. Further, it appears that many, if not all, of those allegations have little or no basis in fact.

Plaintiff's court filings demonstrate that he may be suffering from psychological or psychiatric problems, and the court is sympathetic to Plaintiff's unfortunate circumstances. Those circumstances, however, have no effect on the court's duty under the in forma pauperis statute to dismiss Plaintiff's complaint once the court has determined that it is frivolous.

Accordingly, and for the foregoing reasons, the court concludes that Plaintiff's complaint is frivolous under the in forma pauperis statute and, therefore, should be **DISMISSED**. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *Denton*, 504 U.S. at 33; *Neitzke*, 490 U.S. at 325-28; *Bellmon*, 935 F.2d at 1108-10.

13

## CONCLUSION

The court has determined that Plaintiff's complaint fails to state a claim for relief against the State. Therefore, **IT IS HEREBY RECOMMENDED** that the State's motion to dismiss[32] be **GRANTED**.

In addition, the court has determined that Plaintiff's complaint is frivolous under the in forma pauperis statute. Accordingly, **IT IS FURTHER RECOMMENDED** that Plaintiff's complaint be **DISMISSED** on that basis.

Finally, based upon the court's recommendation that Plaintiff's complaint be dismissed under the in forma pauperis statute, **IT IS FURTHER RECOMMENDED** that the WVCPD's motion to dismiss[33] be deemed **MOOT**.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1)(C). The parties must file any objection to this Report and Recommendation within ten (10) days after receiving it. *See id*. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 14th day of August, 2008.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge

---

[32] *See* docket no. 12.

[33] *See* docket no. 15.

14